UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES E. HORN,                                      Case No. 18-11959

                            Plaintiff,              Marianne O. Battani
v.                                                  United States District Judge

COMMISSIONER OF SOCIAL                              Stephanie Dawkins Davis
SECURITY,                                           United States Magistrate Judge

                            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 9, 10)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On June 21, 2018, plaintiff James Horn filed the instant suit.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Marianne O. Battani referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a

period of disability and disability insurance benefits.  (Dkt. 2).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 9, 10).

### B.   Administrative Proceedings

Horn filed an application for a period of disability and disability insurance

benefits on April 18, 2016, alleging disability beginning on September 24, 2015.

(Tr. 11).[1]  The claims were initially disapproved by the Commissioner on July 22, 2016.  Horn requested a hearing and on November 17, 2017, he appeared with counsel before Administrative Law Judge ("ALJ") John Dodson, who considered the case *de novo*.  (Tr. 11-26).  In a decision dated January 4, 2018, the ALJ found that plaintiff was not disabled.  (Tr. 26).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on May 1, 2018, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.  FACTUAL BACKGROUND

Horn, born July 27, 1981, was 34 years old on the alleged disability onset date.  (Tr. 25).  He has a GED (Tr. 17) and past relevant work as an auto assembler.  (Tr. 25).  He claims he cannot work because he panics around people, he cannot keep up with production-line work, he cannot remember to do things, and he has seizures.  (Tr. 159).  He stopped working when his sister passed away,

---

[1] The Administrative Record appears on the docket at entry number 7.  All references to the same are identified as "Tr."

but he says that he had been struggling with mental health before her death.  (Tr. 17).

The ALJ applied the five-step disability analysis and found at step one that Horn had not engaged in substantial gainful activity since September 24, 2015, the alleged onset date.  (Tr. 13).  At step two, the ALJ found that Horn's major depressive disorder, post-traumatic stress disorder (PTSD), panic disorder, and epilepsy were "severe" within the meaning of the second sequential step.  (*Id.*). However, at step three, the ALJ found no evidence that plaintiff's impairments singly or in combination met or medically equaled one of the listings in the regulations.  (*Id.*).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except no use of ropes, ladders, or scaffolds; must avoid all exposure to hazards; limited to unskilled work involving simple, routine, repetitive tasks with no production like [sic] standards; no work with the public; only occasional interaction with coworkers and supervisors; and no more than occasional changes in the work setting.

(Tr. 15).  At step four, the ALJ found that plaintiff was unable to perform any past relevant work.  (Tr. 25).  At step five, the ALJ denied plaintiff benefits because he

found that there were jobs that exist in significant numbers in the national economy that plaintiff can perform.  (Tr. 25-26).

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether

substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks

omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform.  (*Id*.).  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

Horn argues broadly that the ALJ's decision is not supported by substantial evidence. He insists that the ALJ's discussion of the record contains omissions and inaccuracies and cites some medical records in an attempt to show that he is disabled. Notwithstanding this wide-ranging critique, his argument appears to center on the ALJ's treatment of his subjective complaints in view of the record evidence. Horn insists that the ALJ's "subjective complaints" determination is erroneous because the ALJ should not have relied so heavily on his non-compliance with his treaters' recommendations. He points specifically to the recommendations to seek out other career options, to reduce caffeine consumption, and to stop smoking, although he agrees he was, in fact, non-compliant. (Dkt. 9, at p. 10). However, he maintains he was non-compliant because his mental impairments prevented him from taking action or otherwise complying with the

9

recommendations, so his non-compliance should not be deemed to undermine his subjective complaints.

"A claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence in the record." *Harley v. Comm'r of Soc. Sec.*, 485 Fed. Appx. 802, 804 (6th Cir. 2012); 20 C.F.R. § 404.1529(c).  In assessing a claimant's subjective symptoms, the rulings and regulations direct an ALJ to focus on the consistency of the complaints with the other evidence in the record. *Barncord v. Comm'r of Soc. Sec.*, 2017 WL 2821705, at *8 (S.D. Ohio June 30, 2017).  The Sixth Circuit has characterized SSR 16-3p as merely eliminating "'the use of the term credibility ... to clarify that subjective symptom evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 Fed. Appx. 113, 119 n.1 (6th Cir. 2016) (citation and internal quotation marks omitted); SSR 16-3p, 2016 WL 1119029, at *1.  "SSR 16-3p instructs ALJs in accordance with the applicable regulations to consider all of the evidence in the record in evaluating the intensity and persistence of symptoms after finding the claimant has a medically determinable impairment." *Coffey v. Comm'r of Soc. Sec.*, 2017 WL 3528952, at *8 n.4 (E.D. Tenn. Aug. 16, 2017).  As to a claimant's subjective symptoms, the regulations require an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type,

dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7 ("In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3).").

In assessing Horn's subjective complaints, the ALJ discussed Horn's hearing testimony and function report (Exhibit 3E), as well as the treatment records from his psychiatrist and his therapist.  (Tr.  16-22).  The ALJ concluded that, considering all the evidence, the objective medical evidence did not support Horn's allegations regarding the severity of his symptoms or functional limitation.  Citing 20 C.F.R. § 404.1529(c)(3), the ALJ explained that he considered each of the factors found in the regulation, even though not all were discussed in the decision. He found that,

> the claimant's significant noncompliance with the treatment recommendations made by his mental health providers, including recommendations to reduce the quantity and timing of his caffeine intake, to take actions to pursue his vocational options and not avoid his fears, and to engage in activities such as taking walks to decrease his anxiety, is not consistent with his allegations

> as to the severity of his limitations, as he was not willing
> to fully engage in the treatment offered to him.

(Tr. 22). The ALJ further discussed the opinion and non-opinion medical evidence, which he said demonstrated inconsistency between Horn's statements and the medical evidence.

The ALJ's determination is supported by substantial evidence. Throughout the relevant period, Horn treated with therapist Ms. Marquardt. Most of their discussions during therapy sessions were about Horn's past job at Ford Motor Company. Horn worked for Ford Motor Company prior to submitting his application for disability benefits. His job was on a fast-paced production line around a large group of people. From the alleged onset date through 2017, Ms. Marquardt[2] continually remarked that he could not function in a loud, crowded, fast-paced job. (Tr. 409, 416, 419, 984, 991, 1013, 1016, 1019, 1026, 1029, 1032-33, 1035, 1038, 1086, 1097). She also noted that he would need a job that would allow him 5-7 days to learn a new job. (Tr. 552). Recognizing that Horn would need a different kind of job, Ms. Marquardt expressly and continuously encouraged Horn to search for jobs he could perform, i.e. not fast-paced and without large crowds. (*See, e.g.*, Tr. 395, 406, 409, 422, 447, 460, 488, 509, 546, 555, 562,

---

[2] His therapist, Ms. Marquardt, worked out of his psychiatrist Dr. Parikh's office. (Tr. 19).

1013).  Horn did not comply.  Indeed, there is no indication in the record that he ever searched for other work or schooling for a different vocation.  (Tr. 19).  It appears that his seeking out other work was important to Ms. Marquardt; she mentioned it at almost every session and she warned him that he needed to start working on his career options or "his life will become more complicated than it is." (Tr. 1089).  Still, the record does not reflect any attempts on Horn's part.

Both Ms. Marquardt and Horn's psychiatrist, Dr. Parikh, frequently counseled him to reduce his caffeine intake and to quit smoking.[3]  (*See, e.g.*, Tr. 497).  It does not appear that he ever quit smoking.  Horn received a prescription for Chantix to help him quit sometime prior to May 2015.  (Tr. 940).  However, as late as December 2016, he had not started the Chantix (Tr. 1075) and was still reported smoking in August 2017 (Tr. 1188).  As to his caffeine consumption, Dr. Parikh said Horn would benefit from completely cutting energy drinks.  (Tr. 497). Horn's providers made clear that his caffeine consumption was related to his anxiety and other issues.  For example, on September 24, 2015, Dr. Parikh indicated that Horn needed to "successfully get off the energy drinks before" he could return his job at Ford.  (Tr. 869).  In September 2016, Ms. Marquardt

---

[3] It is not clear from the record whether his treaters believed his smoking had a negative impact on his anxiety.  However, there were many sessions with Ms. Marquardt in which they discussed how his smoking at all hours of the night would wake his wife, and that, consequently, his wife was becoming more and more frustrated with him.  (*See, e.g.*, Tr. 534, 786).  Some of Horn's anxiety was about his somewhat troubled relationship with his wife.

reminded Horn that caffeine increased his anxiety and interrupted his sleep (Tr. 1013), yet Horn did not heed the advice to reduce caffeine consumption.  In December 2016, Dr. Parikh noted that while Horn complained of anxiety, "he still uses energy drinks."  (Tr. 1093).  On June 5, 2017, Ms. Marquardt noted that Horn had eliminated energy drinks.  (Tr. 1162).  However, on June 6th, the next day, Dr. Parikh noted he was still using energy drinks.  (Tr. 1165).  Thus, if Horn did reduce or eliminate caffeine, it was only for a short period of time.  And, his providers were very clear that caffeine was related to his anxiety issues.  Still, Horn did not substantially reduce caffeine consumption.

The ALJ's conclusion, then, that Horn's subjective complaints are not supported by his non-compliance is supported by substantial evidence.  The ALJ concluded that, since he was able to occasionally attempt to comply with the recommendations, such as his apparent attempt to lower caffeine consumption for a brief time, his failure to consistently comply evinced an unwillingness to adhere to medical advice rather than an inability due to his mental impairments.  Horn disagrees.  He insists that his non-compliance was due to his irrational thinking and his impairments.  (Dkt. 9, at p. 10).  However, no medical evidence supports Horn's contention that he was medically and mentally incapable of complying.  None of the medical providers, who continuously provided these recommendations, ever noted that he did not or could not comply because of

mental impairment.  Horn points to Ms. Marquardt's note after a visit as support

for his argument.  She noted once that Horn was "so overwhelmed by his situation

that his judgment [was] impaired and his insight [was] poor."  (Tr. 1204).  She

made this report after her treatment note discussion of the visit she had with Horn

that day.  At that visit, she and Horn discussed his feelings about losing his job at

Ford, his anger and frustration that the medical retirement process was taking a

long time, angering his wife because he woke her up every hour when he had to

smoke, and his hesitation to get in touch with an uncle who came to town.  (Tr.

1203-04).  Thus, in context, it does not appear that Ms. Marquardt's statement

meant Horn could not search for jobs, quit smoking, or stop drinking energy drinks

because of his mental impairments.  The ALJ's conclusion that Horn could

comply, but was unwilling to do so, is not undermined by this evidence.  Hence,

the ALJ's reliance, in part, on his non-compliance was not erroneous.  *Biestek v.

Comm'r of Soc. Sec.*, 880 F.3d 778, 789 (6th Cir. 2017) (Finding that the ALJ

reasonably interpreted the plaintiff's non-compliance with medication as

undermining his subjective statements); *Kestel v. Berryhill*, 2018 WL 618206, at

*5 (S.D. Ohio Jan. 30, 2018) (ALJ did not err in finding plaintiff's noncompliance

with treatment undermined the severity of her conditions).

    In addition to Horn's non-compliance, the ALJ also discussed the objective

medical evidence and concluded that Horn's statements were inconsistent with the

medical evidence.  The objective evidence shows, as the ALJ acknowledges, that

Horn has a long history of mental health impairment that causes some limitation in

his ability to work.  However, his doctors' and his therapist's records do not

indicate that Horn is so limited by his mental impairments that he could not

function in any kind of job, even a simple, slow-paced job without public

interaction.  For example, as discussed above, Ms. Marquardt recommended that

he seek out other, i.e. not fast-paced, work he could do.  This suggests that she did

not believe Horn was incapable of working any job at all, but instead that he is

incapable of working in a job like he had at Ford.  Dr. Parikh, Horn's psychiatrist,

agreed that Horn could no longer work at Ford and that he should get a medical

retirement from Ford.  (Tr. 497, 597, 1007).  On September 22, 2016, and

thereafter, Dr. Parikh said Horn needed to realize he was not functioning and that

he might have to budget expenses to live on disability income.  (Tr. 1023).  He also

stated Horn was unlikely to return to work, and needed to get a medical retirement.

The ALJ gave these statements some weight. (Tr. 23).  In evaluating these

statements, the ALJ found that Dr. Parikh's agreement that Horn should not work

was tied to his job at Ford and that Horn was noncompliant with efforts to reduce

his symptoms.  Horn did not contest this weight determination until his reply brief,

and as such, the argument is waived.[4]  The inability to work at a job like he had at

Ford does not mean that Horn cannot work any kind of job.

Horn's neurologist, who treated him for seizures, consistently recorded

normal mental status examinations.  Specifically, he was alert and oriented times

three; his recent and remote memory were intact; and his attention span and

concentration, fund of knowledge, and spontaneous language and comprehension

were all normal.  (Tr. 234, 1048, 1059, 1067, 1074, 1209, 1217, 1225).  The

neurologist's nurse practitioner stated that she agreed Horn could not work "on a

psychiatric basis."  (*See, e.g.*, Tr. 1213).  The ALJ gave this statement little weight

because this provider was not directly treating Horn for his psychiatric symptoms

and all the mental status examinations at the clinic were within normal limits.  (Tr.

24).  Horn does not contest this determination.  His normal mental status

examinations do not support his subjective statements.  Finally, the ALJ also

considered the State agency reviewing physician's opinion from July 2016.  Dr.

---

[4] As stated, Horn did not challenge the weight given to Dr. Parikh's statements until the reply brief, but even there Horn did not develop the argument that the ALJ should have given the opinion more weight.  For both of these reasons, the argument is waived.  *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs . . . do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.  Further the non-moving party ordinarily has no right to respond to the reply brief. . . .  As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived.") (quoting *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

Balunas opined that Horn was able to understand, carry out, and remember simple instructions; make work-related decisions; respond appropriately to supervision, coworkers, and work situations; and deal with most changes in routine work settings.  (Tr. 61).  The ALJ, while recognizing that Dr. Balunas did not have the benefit of reviewing all the medical records available up to the ALJ's decision, gave the opinion significant weight.  (Tr. 24).  Horn's only challenge to this weight determination is to say that the ALJ "lumped" the medical records together and accepted "reports from non-examining consultants[5] who did not see the last year of records."  (Dkt. 9, at p. 12).  To the extent he is arguing that the ALJ should have discounted the opinion because Dr. Balunas did not consider the entire record, he has framed the argument but neglected to develop it in any meaningful way. Indeed, as stated the argument is no more than perfunctory and therefore deemed waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").  Further, when an ALJ relies on a non-examining source who "did not have the opportunity to review" later submitted medical evidence, especially when

---

[5] There is only one non-examining consultant in the record: Dr. Balunas.  Plaintiff's use of the plural is unclear.

that evidence "reflects ongoing treatment," we generally require "'some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting *Fisk v. Astrue*, 253 Fed. Appx. 580, 585 (6th Cir. 2007)).  The ALJ expressly recognized that Dr. Balunas did not review the entire record, but further observed that the evidence received at the hearing level—after Balunas' opinion—is largely consistent with the evidence received prior to the time Dr. Balunas completed his review.  Hence, he recognized that more records were created after the opinion.  And, the ALJ expressly considered the medical records available after July 2016.  Thus, the fact that the ALJ gave significant weight to an opinion that did not include all the medical records is not a basis, without more, for remand.  *Glasgow v. Comm'r of Soc. Sec.*, 690 Fed. Appx. 385, 387 (6th Cir. 2017) (citing *McGrew v. Comm'r of Soc. Sec.*, 343 Fed. Appx. 26, 32 (6th Cir. 2009) (concluding that an ALJ may rely on a state agency physician's opinion that is not based on all of the medical evidence in the record if the ALJ considers any evidence that the physician did not consider)).

While the medical evidence demonstrates that Horn's mental impairments cause some limitation in his ability to work, the evidence does not support his statements that he cannot work at all.  Accordingly, the ALJ's determination that

Horn's complaints are not supported by the objective medical evidence is supported by substantial medical evidence.

Horn also takes issue with the ALJ's discussion of the changes to his medications throughout the relevant period. In assessing Horn's subjective complaints, the ALJ observed that, though Dr. Parikh described Horn's stability with reports of significant ongoing symptoms, Dr. Parikh only met with Horn every few months and did not frequently make changes to his medications. The ALJ concluded that this was inconsistent with disabling severity. (Tr. 18). Horn argues that he did have frequent changes to his medication. (Dkt. 9, at p. 9). And since he did have frequent medication changes, the ALJ's decision on his subjective complaints is baseless and not supported by substantial evidence. The undersigned need not determine whether the changes in Horn's medication were frequent or infrequent enough to undermine his subjective complaints. Even if the ALJ's characterization of medication changes was incorrect, the error is harmless. The Sixth Circuit has "recently held that even if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it." *Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 507 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.,* 693 F.3d 709, 714 (6th Cir. 2012)). The inconsistency of his subjective complaints with the

treatment notes, and his unwillingness to comply with his treaters'
recommendations, provides substantial evidence for the ALJ's determination,
notwithstanding error, if any, in the ALJ's discussion of the changes in Horn's
medication.

Horn also raises a brief argument that the ALJ incorrectly described a
medical record.  More specifically, he says the ALJ's conclusion that he was
cleared by the psychiatry department of a hospital for outpatient follow-up is
"questionable" since he refused admission.  Thus, he says, the "clearance was not
the psychiatric department's wishes."  (Dkt. 9, at p. 9).  Upon review of the
hospital record at issue, it is clear that the ALJ accurately reported what is written
in the record.  (Tr. 18).  The discharge summary states: "One of his mental health
providers had sent him in for psych eval [for twitching or seizures], but he was
cleared by psych here for outpatient f/u" and for outpatient follow-up regarding his
seizure medications.  (Tr. 252).  The ALJ said the same.  (Tr. 18).  He was
admitted to the hospital for muscle twitches (Tr. 255) that were related to the high
level of valproic acid in his system.  (Tr. 257).  The hospital physician noted that
she consulted with the psychiatric department about adjusting his seizure and other
medication, but Horn did not want to be admitted to the psychiatric unit.  There is
no indication that the psychiatric department did not want him discharged from the
hospital to be seen later for follow-up.  The ALJ did not mischaracterize this

medical record.  Moreover, Horn has not demonstrated prejudicial error from the ALJ's discussion of this particular medical record.  Horn does not argue that if the ALJ had interpreted the hospital discharge record differently, he would have been found disabled.  Indeed, it is not at all clear how this hospital record demonstrates disability.

Horn also raises an argument that the ALJ did not distinguish between pre- and post-alleged onset date medical evidence.  (Dkt. 9, at p. 12).  Specifically, Horn points to the ALJ's statement that medical records from both Dr. Parikh and Dr. Ramarkrishna's records were from after the alleged onset date.  (Tr. 17).  This statement is incorrect; Dr. Ramakrishna treated Horn before the alleged onset date from June through July 2015.  However, the undersigned suggests this error is also harmless.  First, throughout the discussion of Dr. Ramakrishna's records, the ALJ listed the dates of treatment—from June and July 2015.  Having discussed both Horn's alleged onset date and the dates of Dr. Ramakrishna's records from before the onset date, it is clear that the ALJ took into account all of Dr. Ramakrishna's treatment and simply erred in recounting the treatment span.  The mistake is of no moment because Horn has not identified any prejudicial harm resulting from the statement that Dr. Ramakrishna's records were from after the alleged onset date.  For example, he does not suggest that the ALJ's consideration of Dr. Ramakrishna's records is what lead to the ALJ's unfavorable decision.  To the

extent Horn believes the ALJ neglected to distinguish between pre- and post-onset date records, the contention lacks merit.  The ALJ often identified the dates of medical records or their relationship to the alleged onset date throughout the decision.

Finally, Horn says it is irrelevant what weight the ALJ assigned to Dr. Ramakrishna's GAF score since the score came before the alleged onset date.  It is unclear what harm Horn is alleging here.  The ALJ gave the GAF score little weight because these scores are only snapshots of a claimant's functioning and take into account factors outside the scope of consideration.  (Tr. 24).  Since the ALJ gave the score little weight, then the ALJ did not rely on the score.  If Horn's argument is that the weight determination is irrelevant, then giving the score only little weight would seem to amount to the same thing: the score is irrelevant to the ALJ's decision.  Thus, there appears to be no harm with regard to the ALJ's discussion of Dr. Ramakrishna's records.

As noted earlier, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen* 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545). Here, there is substantial evidence in support of the ALJ's determination that Horn's subjective complaints are inconsistent with the objective medical evidence and do not demonstrate that his symptoms are as severe as alleged. Thus, the decision should be affirmed.

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 13, 2019                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge