**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JAMES E. HORN,

    Plaintiff,

v.

    CASE NO. 2:18-cv-11959

    HON. MARIANNE O. BATTANI

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION; GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiff James E. Horn's Objections to the Magistrate Judge's Report & Recommendation ("R&R"). (ECF No. 13). Magistrate Judge Stephanie Dawkins Davis considered the parties' cross motions for summary judgment and, on August 13, 2019, entered an R&R. (ECF No. 12). In the R&R, the Magistrate Judge recommended that the Court grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment. Plaintiff timely objected. For the reasons that follow, the Court **ADOPTS** the R&R, **DENIES** Plaintiff's Motion for Summary Judgment, **GRANTS** the Commissioner's Motion for Summary Judgment, and **DENIES** Plaintiff's Objections.

**I. PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff, James E. Horn, filed his application for Disability Insurance Benefits ("DIB") on April 18, 2016 (Administrative Transcript ("Tr.") 11, 65, 130-31). Plaintiff

alleged disability beginning September 24, 2015 (Tr. 11, 130). After his application was denied, he requested a hearing before an Adminiatrative Law Judge ("ALJ"). On November 17, 2017, the ALJ held a hearing. On January 4, 2018, the ALJ issued a decision finding that Plaintiff was not disabled (Tr. 8-29). On May 1, 2018, the Appeals Council denied Plaintiff's request for review, thus making the ALJ's January 4, 2018 decision final (Tr. 1-5).

Pursuant to the standard for disability, 42 U.S.C. § 423(d)(1)(A), and the sequential evaluation process, 20 C.F.R. § 404.920(a)(4), the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 24, 2015; that Plaintiff had the severe impairments, including major depressive disorder, post-traumatic stress disorder ("PTSD"), panic disorder, and epilepsy; that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that Plaintiff retained the residual functional capacity ("RFC") to perform medium work, as defined in the governing regulation, with specified exceptions. The ALJ limited Horn to unskilled work involving simple, routine, repetitive tasks with no production-like standards, no work with the public, only occasional interaction with coworkers and supervisors, and only occasional changes in the work setting. Because the ALJ found that Plaintiff was unable to perform his past relevant work (Tr. 25, Finding 6), he considered factors including Plaintiff's age, education, work experience, and RFC, and determined that there were jobs existing in significant numbers in the national economy that he could perform (Tr. 25, Finding 10). Based on those factors, the ALJ concluded that Horn was not entitled to benefits.

2

Horn exhausted his administrative remedies and seeks judicial review. He contends that the record, as a whole, lacks evidence to support the decision that he has not been under a disability.

## II. STANDARD OF REVIEW

### A. Objections to a Magistrate Judge's R&R

A district court must conduct a *de novo* review of the portions of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1). The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" judge. Id. The requirement of *de novo* review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure." United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985). Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[ ] that the district judge would be the final arbiter" of a matter referred to a magistrate. Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir. 1987).

The Sixth Circuit has made clear that "[o]verly general objections do not satisfy the objection requirement." Spencer v. Bouchard, 449 F.3d 721, 725 (6th Cir. 2006). Only specific objections are entitled to *de novo* review; vague and conclusory objections amount to a complete failure to object as they are not sufficient to pinpoint those portions of the R&R that are legitimately in contention. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir.1986) (per curiam). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). "'[O]bjections disput[ing] the correctness of the

3

magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." Spencer, 449 F.3d at 725 (quoting Miller, 50 F.3d at 380).

### B. Standard of Review Applicable to Social Security Cases

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the Commissioner or this Court discuss every piece of evidence in the administrative record. Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007).

## III. ANALYSIS

In support of his position that the decision of the ALJ is not supported by substantial evidence and that the record contains multiple findings and evidence that support his claim, Horn raises seven objections. Each is discussed below.

### A. Compliance with Behavioral Recommendations

Horn maintains that the ALJ relied too heavily on Plaintiff's noncompliance with the recommendations of his treaters, particularly as to caffeine consumption. Plaintiff notes that he complied with medication, did reduce his caffeine consumption, and, further, there is no evidence to support his compliance would have restored his ability to work.

At the outset, the Court recognizes that a claimant must follow doctor-prescribed treatment in those situations where "th[e] treatment can restore" the claimant's "ability to work." 20 C.F.R. § 404.1530(a). In the absence of a good reason not to follow doctor's orders, a claimant will not be deemed disabled. 20 C.F.R. § 404.1530(b). One potentially acceptable reason for the failure to follow prescribed treatment, is a claimant's mental limitations. See White v. Comm'r of Soc. Sec., 572 F.3d 272, 283 (6th Cir. 2009) (citations omitted) (recognizing that the failure may be a "symptom of the disorder itself"). Notably, the Sixth Circuit decision did not prohibit lower courts from considering noncompliance, nor did the appellate court decision establish a "per se rule that the existence of any mental impairment(s) constitutes an 'acceptable reason' for failing to follow prescribed treatment" under the governing regulation. Smith v. Astrue, 1:12-CV-00831, 2012 WL 6607007 (N.D. Ohio Dec. 18, 2012).

It is undisputed that throughout most of the pertinent time frame, Horn used energy drinks despite repeated entreaties by his therapist to quit due to the impact on his

5

anxiety and sleep problems.  Likewise, his treating psychiatrist, Dr. Bakul K. Parikh, explained how caffeine consumption interfered with Plaintiff's treatment.

Horn is correct that the R&R misstated the existence of a conflict as to whether Horn did quit using energy drinks in June 2017; however, it is a misstatement of no consequence.  The ALJ articulated other grounds for rejecting the limitations advocated by Plaintiff; he did not limit his consideration to compliance with the recommendation to stop using energy drinks.   Specifically, the ALJ found that Horn's statements "concerning the intensity, persistence and limited effects of [his] symptoms were not entirely consistent with the medical evidence and other evidence in the record. . . . (Tr. 17).  According to the ALJ, there was "little change in [Horn's] treatment over time, and he was frequently noncompliant with the behavioral recommendations his therapist indicated were essential to moving forward with his symptoms."  (Id.)  For example, the ALJ found that Horn's therapist and psychiatrist repeatedly urged Horn to explore other career options and to leave the house, and their repeated recommendations demonstrate that Horn was not incapable of following therapy, but noncompliant.  (Id.) Horn likewise failed to engage in other behavior steps recommended by his therapist to reduce his anxiety.  (Id. at 20).  The ALJ set forth inconsistencies between the severity of the symptoms reported by Plaintiff and the actions he was willing to take to alleviate the symptoms.

In the case here, the record is replete with examples of Horn's noncompliance with exploring other employment options, caffeine and smoking prohibitions, anxiety reduction activities as well as examples of how compliance could improve his level of functioning.  In sum, the record provides a sufficient basis for supporting the ALJ's

6

findings regarding compliance with treatment–Plaintiff's noncompliance is not caused solely by Plaintiff's symptoms themselves.

### B. Failure to Consider Impaired Judgment

According to Horn, the record shows he was so overwhelmed by the paperwork he needed to complete for a medical retirement, his judgment was impaired. He asserts that the R&R mischaracterizes his feelings of being overwhelmed as a one time occurrence rather than ongoing. Horns points to the fact that his therapist eventually stopped encouraging him to seek other employment, and Dr. Parikh urged Horn to accept a medical retirement.

It is clear based on the record that neither Plaintiff's therapist nor his psychiatrist thought Horn could return to his former position on the assembly line. Although Horn raises a challenge based on the weight the ALJ gave to Dr. Parikh's statements as to Plaintiff's condition, the Magistrate Judge correctly found Plaintiff had waived such a challenge because he did not raise it until his reply brief. Moreover, Horn did not develop the argument about the weight given to the opinion by the ALJ. See Scottsdale Inc. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008).

### C. Failure to Quit Smoking

In his third objection, Horn focuses on the statement in the R&R assessing Horn's failure to stop smoking. Plaintiff contends that the focus on his failure was improper because the record contains no evidence that if he quit smoking he would no longer be disabled. Consequently, Plaintiff asserts that his smoking is not relevant to a discussion of his noncompliance.

7

The inclusion of smoking as an area of noncompliance is simply another example that reinforces the ALJ's finding that Horns' "failure to attempt any of the behavioral changes [ ] recommended with consistency" stemmed from "an unwillingness rather than an inability stemming from mental impairments." (ECF No. 7-2 42).  Accordingly, the inclusion is not improper.

### D.  Mischaracterization of Medical Statements

Horn next raises several medical statements from Dr. Parikh as grounds upon which this Court should reject the ALJ's finding.  Specifically, `1the statements were deemed "vague and conclusory." (ECF No. 13 at 4).  According to Horn, there is nothing vague about Dr, Parikh's statements that Plaintiff was "nonfunctioning" or needed a "medical retirement."  (Id.)

Again, the Court finds this argument is waived.  Plaintiff did not raise this argument or develop it .  Even if he had, the ALJ correctly deemed it unclear whether the statement pertained to Plaintiff's previous employment on the assembly line or any employment.  Further, to the extent Dr. Parikh believed Plaintiff could not work at any job, that statement goes to the ultimate determination of disability, which is reserved to the Commissioner.  See 20 C.F.R. § 404.1527(e) and SSR 96–5p.  The ALJ did not disregard the basis for Dr. Parikh's opinion, but carefully reviewed all of the evidence supporting the opinion.

### E.  Credibility Determination

Plaintiff argues that the ALJ erred in discounting his credibility.  Case law is clear-- credibility determinations require the ALJ to do more than make a single, conclusory statement regarding an individual's credibility.  See Rogers v. Comm'r of Soc. Sec., 486

F.3d 234 (6th Cir. 2007) (noting that credibility determination must be reasonable and supported by substantial evidence). In support of his position, Horn focuses on the ALJ's assessment that the lack of frequent changes in medication factors into the determination that Plaintiff overstated his subjective complaints. According to Horn, his medication was changed all but two times he was treated.

Plaintiff's medication was changed eight times over a fourteen-month period. To the extent that the Court rejects the ALJ's characterization of changes as infrequent, the credibility determination is not undermined. Simply put, Plaintiff's noncompliance with treatment recommendations was neither isolated nor short-lived. The noncompliance supports the ALJ's evaluation that Plaintiff's subjective symptoms were overstated. Under longstanding authority, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997).

There is nothing presented by Plaintiff to demonstrate that the assessment constitutes prejudicial error.

### F. Mischaracterization of the Record

Lastly, Plaintiff asserts that the ALJ mischaracterized the record, and that taken as a whole, the record supports Plaintiff's claim of disability.

This objection certainly constitutes a general objection. Plaintiff does not elaborate on what evidence was misconstrued beyond the objections addressed above. "A general objection to the entirety of the magistrate's report has the same effects as would a failure to object." Howard v Sec'y of Health & Human Servs., 932 F.2d 505,

509 (6th Cir. 1991). Finally, even if the Court determined that "there exists in the record substantial evidence to support a different conclusion," it may not reverse the Commissioner's decision merely because it may disagree with the conclusions. See McClanahan v. Comm'r of Soc. Sec., 474 F.3d 830, 833 (6th Cir. 2006); Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994) (recognizing the existence of a "zone of choice" within which the decisionmakers can go either way, without interference by the courts").

**IV. CONCLUSION**

For the foregoing reasons, the Court **DENIES** Plaintiff's objections, **ADOPTS** the recommendations set forth in the R&R, **GRANTS** the Commissioner's Motion for Summary Judgment, and **DENIES** Plaintiff's Motion for Summary Judgment.

**IT IS SO ORDERED.**

                                        s/Marianne O. Battani
                                        MARIANNE O. BATTANI
                                        UNITED STATES DISTRICT JUDGE

DATED: September 23, 2019